IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CHARLES POTTER, JR. and<br>VELDA C. JONES-POTTER,<br><br>　　Plaintiffs Below,<br>　　Appellants,<br><br>　　v.<br><br>CITY OF WILMINGTON, a Municipal<br>corporation of the State of Delaware,<br>CITY OF WILMINGTON<br>DEPARTMENT OF LICENSES AND<br>INSPECTIONS, a department of the<br>City of Wilmington, and<br>JEFFREY J. STARKEY, Commissioner<br>of Wilmington Department of Licenses<br>and Inspections,<br><br>　　Defendants Below,<br>　　Appellees. | § § § § § § § § § § § § § § § § § § § § § § § | No. 265, 2018<br><br>Court Below—Superior Court<br>of the State of Delaware |

Submitted: December 5, 2018
Decided:　January 7, 2019

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

### <u>O R D E R</u>

This 7th day of January, 2019, after careful consideration of the parties' briefs and the record on appeal, it appears to the Court that that the judgment of the Superior Court should be affirmed on the basis of and for the reasons stated in the Superior Court's April 16, 2018 bench ruling.

(1)     Charles Potter, Jr. and Velda Jones-Potter ("the Potters") contracted SC&A Construction ("SC&A") to repair damage to the roof of their house in Wilmington, Delaware after a tree fell on it in late September 2010.

(2)     After a number of changes[1] and delays, the Potters contacted the City of Wilmington's Department of Licenses and Inspections ("L&I"). L&I conducted an inspection and issued a notice of violation in 2012 (the "2012 Notice"), finding that SC&A failed to obtain required permits and inspections and requiring that SC&A to obtain those permits and inspections.[2] SC&A appealed the 2012 Notice to the L&I Review Board, which ultimately affirmed the 2012 Notice on November 12, 2014 (the "2014 Board Decision."). In 2017, the Potters again contacted L&I and requested another inspection.[3] L&I did so and issued a letter of findings in July 2017 (the "July 2017 Letter"), noting several Wilmington building-code violations.[4]

(3)     The Potters and SC&A were also engaged in arbitration and litigation between themselves regarding their respective obligations under the roof-repair contract that ultimately ended with a mechanics' lien judgment in SC&A's favor and against the Potters, who paid the mechanics' lien to avoid a sheriff's sale.

---

[1] App. to Answering Br. B81–82 ("B__" hereafter). The scope of the work on the Potters' house expanded to include removing the roof, reframing the attic, installing a new roof, and considerable other interior and exterior work. *Id*.
[2] App. to Op. Br. at A19 ("A__" hereafter); B79.
[3] B85.
[4] A21–22.

(4)     With proceedings against SC&A going poorly for the Potters, they also filed an action in Superior Court against the City of Wilmington seeking a writ of *mandamus* commanding the City to enforce the 2014 Board Decision and the July 2017 Letter by requiring SC&A to secure the proper permits and inspections that L&I identified in the 2012 Notice and to conduct any necessary remedial work at SC&A's expense.  The Superior Court dismissed the Potters' *mandamus* action on the pleadings in a bench ruling that was later incorporated into a written order.[5]

(5)     *Mandamus* is an "exceptional remedy,"[6] and courts issue writs of *mandamus* only when the duty sought to be enforced is ministerial rather than discretionary and where there is no other adequate remedy.[7]  Even then, *mandamus* "is issuable not as a matter of right, but only in the exercise of sound judicial discretion."[8]  We therefore review for abuse of discretion.

(6)     The Potters contend that Wilmington had a ministerial, nondiscretionary duty to enforce the 2014 Board Decision and July 2017 Letter and to order SC&A to obtain any permits and inspections and conduct the remedial work.  We disagree.  In our view, the Superior Court correctly determined that the City has

---

[5] A89–90; *see* Order, *Potter v. City of Wilmington*, N17M-11-233 (Del. Super. Apr. 24, 2018) Dkt. No. 17 (granting Wilmington's motion to dismiss for "the reasons stated in open court and on the record at argument on April 16, 2018").

[6] *Brittingham v. Town of Georgetown*, 113 A.3d 519, 524 (Del. 2015).

[7] *Id*.

[8] *Petition of State*, 616 A.2d 292, 293 (Del. 1992).

discretionary authority to choose the manner in which it will enforce its building code. Therefore, the remedy of *mandamus* is not available.

(7)    Furthermore, a plaintiff seeking *mandamus* must also lack an alternative remedy before a court may issue the writ. The Potters, however, have several other remedies, at least one of which they already exercised. They filed a lawsuit against SC&A that resulted in a judgment—affirmed by this Court—in favor of SC&A. The Superior Court correctly concluded that the Potters did not lack an alternative remedy for *mandamus* purposes simply because the Potters' lawsuit did not go the way they wanted it to go.[9]

(8)    We see no error in the Superior Court's ruling and do not believe that it abused its discretion when it declined to issue a writ of *mandamus*.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

[9] A90; *see In re Allen*, 82 A.3d 729 (Del. 2013) ("As a condition precedent to the issuance of a writ of *mandamus*, a petitioner must demonstrate that . . . no other remedy is, *or was*, available. This Court will not allow the extraordinary writ process to be distorted into a substitute for appellate review.") (emphasis added); *In re Johnson*, 41 A.3d 430 (Del. 2012) (declining to grant writ of *mandamus* where petitioner had unsuccessfully appealed a Superior Court decision).

4