Martha Pauline TARR, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Sept. 20, 1984.
Decided: Dec. 12, 1984.

. Karl Haller, Asst. Public Defender, Georgetown, for defendant below, appellant.

Gary A. Myers, and John M. Sandy, Deputy Attys. Gen., Georgetown, for plaintiff below, appellee.

Before HERRMANN, C.J., and HORSEY and MOORE, JJ.

MOORE, Justice.

The defendant, Martha P. Tarr, appeals her conviction in the Superior Court of first degree vehicular homicide. She contends that the State was precluded by the double

jeopardy clauses of the United States and Delaware Constitutions [1] from bringing the charge against her because of her earlier election to participate in a first offender's program for those charged with drunken driving.

We conclude that the defendant is not entitled to the protection she seeks. Jeopardy for vehicular homicide did not attach when she voluntarily chose to enroll in the first offender's program, a purely administrative project. Accordingly, we affirm.

## I.

On September 7, 1981, after leaving a bar near Seaford, Delaware, the defendant Tarr drove her car into a tree adjacent to Route 13a. Both she and her passenger were injured, and the latter immediately lapsed into a coma. At the time of the accident, Tarr's blood alcohol content, by weight, was found to be .32%.

On May 4, 1982, while her passenger remained comatose, the defendant was charged with operating a motor vehicle under the influence of alcohol pursuant to 21 *Del.C.* § 4177.[2] At her arraignment on June 2, 1982, the defendant elected to participate in the first offender's course of instruction pursuant to 21 *Del.C.* § 4177B (1979 Repl.)[3] She later successfully completed the program.

On December 8, 1982, the passenger, without regaining consciousness, died from

1. These constitutional provisions are virtually identical. Thus, the United States Constitution provides that:

No person "shall ... be subject for the same offence to be twice put in jeopardy of life or limb;" U.S. Const., amend. V.

The Delaware provision states that:

No person "shall be for the same offense twice put in jeopardy of life or limb;" Del. Const. art. I, § 8.

2. 21 *Del.C.* § 4177 provides in part:

(a) No person shall drive, operate or have in actual physical control a vehicle, an off-highway vehicle, a moped or a bicycle while under the influence of intoxicating liquor or of any drug or any combination of drugs and/or intoxicating liquor.

(b) Any person charged under subsection (a) of this section whose blood alcohol concentration is one tenth of 1% or more by weight as shown by a chemical analysis of a blood, breath or urine sample taken within 4 hours of the alleged offense shall be guilty of violating subsection (a) of this section. This provision shall not preclude a conviction based on other admissible evidence.

3. 21 *Del.C.* § 4177B, as then in effect, provided:

(a) Any person charged with violation of § 4177 of this title who qualifies as a first offender may, at the time of his arraignment, elect to apply to the Secretary for enrollment in course of instruction or program of rehabilitation established pursuant to § 4177D of this title in lieu of standing trial on the alleged offense. If he elects to apply, his application shall constitute a waiver of the right to a speedy trial. If the person elects not to apply, or if he is not accepted, he shall be promptly arraigned for a violation of § 4177 of this title. If upon enrollment in such program, he fails to comply with the terms of enrollment or fails to satisfactorily complete the course of instruction and/or program of rehabilitation, he shall be brought before the court and, upon a determination by the court that the terms have been violated, he shall be promptly arraigned for a violation of § 4177 of this title.

(b) Upon satisfactory completion of the course of instruction and/or program of rehabilitation, including payment of all fees under the schedule adopted by the Secretary, by a person who applies for enrollment in such course under this section, the Secretary shall forward to the court a statement confirming the satisfactory completion of the course and the payment of fees, and the criminal charges for violation of § 4177 of this title shall be dropped.

(c) The driver's license and/or driving privileges of a person applying for enrollment in a program pursuant to subsection (a) of this section shall forthwith be revoked by the Secretary for a period of 1 year. If the person is accepted into the program, the period of revocation shall be for 1 year from the date of the initial revocation. If the person is not accepted for enrollment, or if he is found by the court to be in violation of the terms of enrollment, the revocation under this section shall continue until sentence is imposed. This revocation shall not be concurrent with or a part of any period of revocation established under any other provisions of this subchapter.

(d) For purposes of subsections (d) and (e) of § 4177 of this title and this section, previous enrollment in a course of instruction or program of rehabilitation pursuant to this section and §§ 4177, 4177A, 4177C and 4177D of this title within 5 years of the date of a violation of § 4177 of this title shall constitute a first offense.

the injuries suffered in the accident. The defendant was subsequently indicted for vehicular homicide in the first degree. 11 *Del.C.* § 630A (1982 Supp.).[4] After the arraignment Tarr moved to dismiss the indictment on double jeopardy grounds, arguing that her prior drunk-driving charge and first offender's election precluded the subsequent homicide prosecution. The motion to dismiss was denied and the defendant was subsequently found guilty after a bench trial. She was sentenced to four years imprisonment, suspended for four years during which period she had to contribute 150 hours of community service work and undergo alcoholism counseling.

## II.

Both the United States and Delaware Constitutions provide that no person shall be twice put in jeopardy of life or limb for the same offense. U.S. Const., amend. V., Del. Const., art. I, § 8. See n. 1. The United States Supreme Court has recognized that the effect of the double jeopardy clause is to afford to criminal defendants several basic protections. Specifically, the Court has held that "[the double jeopardy clause] protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense". *Ohio v. Johnson,* —— U.S. ——, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984), quoting *Brown v. Ohio,* 432 U.S. 161, 165, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). *See also, Illinois v. Vitale,* 447 U.S. 410, 415, 100 S.Ct. 2260, 2264, 65 L.Ed.2d 228 (1980).

■ At the heart of the double jeopardy clause is a concern for protecting an individual from harassment by the government through its multiple attempts to bring the "same" charge against a defendant for conduct arising out of the same factual situation. *State v. Heitter,* Del.Supr., 203 A.2d 69 (1964).

■ A crucial determination that must be made, when double jeopardy is an issue, is whether jeopardy attached in the first proceeding. The question of when jeopardy attaches is relatively settled in most instances. In a nonjury trial jeopardy attaches when "the first witness is sworn". *Willhauck v. Flanagan,* 448 U.S. 1323, 101 S.Ct. 10, 65 L.Ed.2d 1147 (1980). In a jury trial it occurs when the jury is impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 57 L.Ed.2d 24 (1978). Finally, in those cases where the defendant is convicted, based on a plea of guilty, double jeopardy will be found to preclude a subsequent conviction for the same offense. *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883).

■ A defendant's election to participate in a first offender's program to avoid prosecution for the charge of driving under the influence, pursuant to 21 *Del.C.* § 4177, does not fit within any of these typical situations where jeopardy usually attaches. However, given the nature of this project, we find it conceptually incompatible with the usual indicia upon which a viable claim of double jeopardy rests.

We previously recognized the administrative nature of the first offender's program

---

The first offender's program applicable to Tarr was the one prescribed by 61 Del.L.Ch. 474 § 2, § 4177B (1978). Section 4177B has subsequently been amended to severely limit who may elect to participate in the first offender's program. The case presently before the Court would not arise under the revised statute because under the new section an individual may not opt to participate in the program 1) if his blood alcohol level was two tenths of 1% or more, or 2) if an accident was involved with respect to the offense in question which resulted

in injury to any person other than the defendant. 21 *Del.C.* § 4177B (1982 Supp.).

4. 11 *Del.C.* § 630A (1982 Supp.) provides:

A person is guilty of vehicular homicide in the first degree when while in the course of driving or operating a motor vehicle under the influence of alcohol or drugs, as defined by § 4177 of Title 21, his criminally negligent driving or operation of said vehicle causes the death of another person. Vehicular homicide in the first degree is a class D felony.

in *Rogers v. State,* Del.Supr., 457 A.2d 727 (1983). There, we noted that "the obvious legislative purpose of that program was to permit first offenders to choose between adjudication of the charge through the judicial system or administrative processing without adjudication of guilt if successful in the rehabilitation program". *Id.* at 733, n. 11, quoting *State v. Marjorie H. Bakke,* Del.Super., Cr.A. S79–04–0051A (June 20, 1979) (Walsh, J.).[5]

■ Thus the administrative first offender's program is similar to a civil sanction which does not preclude a subsequent criminal prosecution. It is well established that double jeopardy "only prohibits twice punishing a person *criminally* for the same offense, [and that] the State may impose both a criminal and a civil penalty for the same act". *State v. Kamalski,* Del.Super., 429 A.2d 1315, 1318 (1981) (emphasis in original). *See Helvering v. Mitchell,* 303 U.S. 391, 58 S.Ct. 630, 82 L.Ed. 917 (1938).

Ms. Tarr contends that the first offender's program has many attributes of a criminal conviction. She points to the fact that the program placed restrictions on her liberty, since she had to enroll in a course of instruction and adhere to rules and regulations promulgated by the Secretary of Public Safety. She notes that she was required to pay a fee for the program, which could not be higher than the minimum fine that may be imposed for a drunken-driving conviction. 21 *Del.C.* § 4177D (1978). Finally, the defendant observes that enrollment in the first offender's program results in the revocation of the participant's driver's license for one year, equal to the same penalty imposed after a conviction.

In some ways these characteristics resemble probation or criminal punishment,

but they do not flow from an exercise by the State of its governmental powers of prosecution. Instead, the defendant has voluntarily chosen an alternative course, the goals of which are to address the many facets of a serious problem without recourse to criminal sanctions. The non-criminal aspect of the first offender's program also is apparent from the fact that it is administered by the Secretary of Public Safety rather than the Attorney General, the State's chief law enforcement officer. 21 *Del.C.* § 4177B.

Moreover, the entire thrust of the program is a concern for rehabilitation rather than punishment. This is illustrated by the fact that the participant avoids the criminal justice system, contingent on the completion of this rehabilitative course. The distinction between punative and remedial goals of a program was recognized by the Superior Court in *State v. Kamalski,* Del. Super., 429 A.2d 1315 (1981). Holding that the Habitual Offender Act[6] and its enforcement provisions did not violate the constitutional prohibitions against double jeopardy, the court reasoned that "[t]he primary purpose of ... [the Habitual Offender Act] is to foster public safety on the highways of this State, and not to punish persons who violate traffic regulations". *Id.* at 1318. *See also Villa v. State,* Del. Supr., 456 A.2d 1229, 1231–1232 (1983) (construing the motor vehicle Habitual Offender Act as civil in nature, rather than criminal, and providing that its sanctions may be imposed concurrent with or subsequent to criminal penalties).

Finally, the defendant observes that despite her successful completion of the first offender program, she will be treated as a second offender subject to stricter sanctions if she is convicted of driving under

---

**5.** There are several other situations that have been recognized where double jeopardy will not be found to preclude a subsequent criminal charge brought on the basis of conduct which has already subjected the defendant to some type of administrative "punishment". *See Com. v. Clark,* 238 Pa.Super. 519, 361 A.2d 779 (1976) (Double jeopardy did not preclude criminal charges being brought against a prisoner who

had already been subjected to administrative prison sanctions for the same conduct.)

**6.** 21 *Del.C.* § 2802(1). The Habitual Offender Act provides for the revocation of an individual driver's license if he has accumulated a specified number of convictions arising out of the operation of a motor vehicle.

the influence within five years of her first arrest. This however does not convert completion of the course into a conviction. If anything, it highlights the distinction between its administrative character and a criminal proceeding. No judgment of conviction resulted from the defendant's participation in this program. Indeed, there could be none, since only a court may enter such an order. Moreover, we are satisfied that a rational statutory criterion such as this may enhance a criminal sanction. In our view it is a valid consideration in the imposition of sentence once the objectives of a prior administrative proceeding have been defeated by a defendant's later, but similar, misconduct.

Based on the foregoing, we conclude that Ms. Tarr's voluntary participation in this remedial course· raises no viable double jeopardy bar to her prosecution, conviction and sentence for this most serious offense of taking another person's life.[7]

The judgment of conviction is AFFIRMED.

---

**7.** Because we conclude that the first offender's program is administrative in character, we do not reach the State's argument that while driving under the influence is a lesser included offense of first degree vehicular homicide under ʂthe standard set forth in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), a subsequent prosecution for the "greater offense" is permissible, since all elements of the greater offense did not exist at the time of the initial prosecution.